# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Philip G. Reinhard | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 11 C 50145 | **DATE** | 10/29/2012 |
| **CASE TITLE** | Thomas Sefick vs. Chad Hunter, et al. | | |

**DOCKET ENTRY TEXT:**

For the reasons stated below, the court grants summary judgment to the Village of Machesney Park as to all of plaintiff's federal and state-law claims and dismisses with prejudice Hunter as a defendant.

*Philip G. Reinhard*

■[ For further details see text below.]

Electronic Notices.

## STATEMENT - OPINION

Plaintiff, Thomas Sefick, filed a seven-count complaint pursuant to 42 U.S.C. § 1983 and Illinois law against Chad Hunter,[1] a zoning inspector for the Village of Machesney Park, Illinois (Village), Rocco Wagner, a former deputy chief of the Winnebago County Sheriff's Department, the Village, and Winnebago County, Illinois (County). Of pertinence to the present motion, plaintiff alleges that the Village is liable for the actions of Wagner related to the § 1983 claims in Counts I - III under Monell v. Department of Social Services, 436 U.S. 658 (1978), and as to the state-law claims under a theory of vicarious liability. The Village has moved for summary judgment, and plaintiff has responded.

The background facts are that Wagner and Hunter visited plaintiff's property in the Village regarding a possible zoning violation. Later that same day, plaintiff went to the Village offices and met with Mayor Tom Strickland[2] regarding the zoning issue. At that time, Wagner encountered plaintiff. According to plaintiff, Wagner falsely arrested him and also used excessive force in doing so. The various claims in the complaint arise out of this incident.

In considering a motion for summary judgment, the court construes all facts and reasonable inferences in the light most favorable to the non-moving party. Thayer v. Chiczewski, Nos. 10-1974 & 10-2064, slip op. at 13 (7th Cir. Sept. 18, 2012). Summary judgment is appropriate only if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Thayer, slip op. at 13.

§ 1983/ Monell Liability

A local government may be liable for money damages under § 1983 only if the unconstitutional act complained of is caused by: (1) an official policy adopted and promulgated by its officials; (2) a governmental practice or custom that, although not officially authorized, is widespread and well-settled; or (3) an official with final policymaking authority. Thomas v. Cook County Sheriff's Dept., 604 F. 3d 293, 303 (7th Cir. 2010). To demonstrate that the local government is liable for a harmful custom or practice, a plaintiff must show that its policymakers were deliberately indifferent to the known or obvious consequences. Thomas, 604 F. 3d at 303. Put another way, they must have been aware of the risk created by the custom or policy and must have failed to take appropriate steps to protect the plaintiff. Thomas, 604 F. 3d at 303.

The official policy or custom requirement for § 1983 liability is designed to distinguish acts of the municipality from acts of its employees, thereby making clear that municipal liability is limited to actions for which the municipality is actually responsible. Garduno v. Town of Cicero, 674 F. Supp. 2d 976, 990 (N.D. Ill. 2009) (citing Pembaur v. City of Cincinnati, 475 U.S. 469, 479 (1986)). Policymakers are those who possess authority under state law to adopt rules for the conduct of the particular governmental entity. Garduno, 674 F. Supp. 2d at 990-91 (citing Auriemma v. Rice, 957 F. 2d 397, 401 (7th Cir. 1992)).

**STATEMENT - OPINION**

Here, plaintiff relies heavily on the written intergovernmental agreement between the Village, the County, and the Sheriff's Department[3] as the basis for his contention that liability should be imposed against the Village for the alleged acts of Deputy Chief Wagner when arresting him. In particular, plaintiff focuses on the language in the agreement that provides that the "County personnel assigned herein for the purpose of performing their required services, and so as to give official status to their actions, shall be deemed to be agents of the Village."

This myopic view of the agreement would appear, at first glance, to support plaintiff's position. But this isolated provision, standing alone, is insufficient to create Monell liability when viewed in light of the entire agreement.[4]

Paragraph IV of the agreement contains language that is in fact dispositive of the Monell issue. That provision states, in pertinent part, that "[n]ot-withstanding anything herein to the contrary" the Sheriff retains control over "all matters incidental to the performance of the police protection and law enforcement services," including but not limited to, the "methods of rendering such services," the "level of standards of performance," the "discipline of any personnel," and the "general control" over all assigned personnel. Moreover, this same paragraph provides that "[a]t no time shall any officer, official, or employee of the Village undertake to direct any of the assigned personnel as to matters incidental to the performance of police protection and law enforcement services."

This language virtually closes the door on plaintiff's claim that the Village is liable as a policymaker under Monell. There is simply no way that any Village official, including Mayor Strickland, could be considered to be a policymaker as it relates to the function of law enforcement personnel or services provided under the agreement. Pursuant to the agreement, all such control over policing was unequivocally retained by the Sheriff exclusively. This conclusion is bolstered by the undisputed evidence of Strickland who stated repeatedly in his deposition that neither he nor any other Village official had any control over the police operations provided by the County under the agreement.

Plaintiff also argues that the act of entering into the agreement itself was an official policy of the Village sufficient to create Monell liability. This contention fails for two reasons. First, even if it was a policy-making decision, there is no evidence to show that entering into the agreement caused any of plaintiff's alleged injuries. There is no evident connection between the decision to enter into the agreement and any specific actions by Wagner that are alleged to have harmed plaintiff. Nor is there any evidence demonstrating that the Village sought to impose any unconstitutional police activities on its citizenry via the agreement or the decision to engage the County to provide for its law enforcement needs.

Second, this argument is foreclosed by Ross v. United States, wherein the Seventh Circuit held that imposing liability on a city that had no authority to influence a county's public safety procedures under an intergovernmental agreement would effectively create the respondeat superior liability that the Supreme Court has soundly condemned. 910 F. 2d 1422, 1429 (7th Cir. 1990). A contrary result would effectively read potential § 1983 liability into every intergovernmental agreement in the State of Illinois. Ross, 910 F. 2d at 1429. The reasoning of Ross applies to the facts of this case and refutes plaintiff's argument.

Because the undisputed evidence in this case establishes that the Village had no policy-making authority over Deputy Chief Wagner or any other law enforcement personnel, under the agreement or otherwise, the Village is entitled to summary judgment as to all of plaintiff's § 1983 claims.[5]

State-law Claims/Vicarious Liability

Illinois law provides that the liability of an individual will be imputed to another only if there is a master/servant, principal/agent, or employer/employee relationship between the two. Phillips v. Quality Terminal Services, LLC, 855 F. Supp. 2d 764, 780 (N.D. Ill. 2012) (citing Moy v. County of Cook, 159 Ill. 2d 519 (1994)). If a defendant is the agent of another then the other party is liable for all acts performed within the scope of that agency. Phillips, 855 F. Supp. 2d at 780. On the other hand, if the defendant is an independent contractor then the other party will not be held vicariously liable unless the other party retained control over the operative details of the defendant's work. Phillips, 855 F. Supp. 2d at 780.

The test of agency under Illinois law is whether the alleged principal has the right to control the manner and method in which work is carried out by the alleged agent and whether the alleged agent can affect the legal relationships of the principal. Phillips, 855 F. Supp. 2d at 781. Although there is no rigid rule for determining whether an agency or independent contractor relationship exists, the four major factors to consider are: (1) the right to control the manner in which work is performed; (2) the method of payment and whether taxes are deducted; (3) the level of skill required to perform the work; and (4) the furnishing of necessary tools, material, and equipment.

**STATEMENT - OPINION**

Phillips, 855 F. Supp. 2d at 781. The right to control the manner in which work is performed is considered the hallmark of agency. Phillips, 855 F. Supp. 2d at 781. Conversely, an independent contractor undertakes to produce a certain result, but is not controlled in regard to how that result is achieved. Phillips, 855 F. Supp. 2d at 781.

In this case, plaintiff seizes on the provision in the agreement stating that law enforcement personnel, such as Wagner, are deemed to be agents of the Village. That language alone does not carry the day for plaintiff or even create a question of material fact as to whether Wagner was an agent of the Village. This is so because the term "agent" in the agreement is limited to the purpose of giving "official status to [the agent's] actions." Thus, it is evident that the parties to the agreement intended to use the term "agent" in a particular way and for a unique purpose as opposed to its ordinarily understood meaning. This provision alone does not support the conclusion that it is referring to "agent" in the legal sense of imputing liability to the Village for the acts of the assigned personnel under the agreement. In fact, such a conclusion is rendered unreasonable in light of the language in the agreement wherein the County expressly agrees to hold the Village "harmless from any suit or claim brought by a person or entity."

Moreover, when the agreement is viewed in its entirety in light of the relevant factors under Illinois law, it becomes quite apparent that no agency relationship was created between law enforcement personnel employed to work on behalf of the Village. Again, the primary factor is who retains the right to control the work of the individual. Under the agreement, total control over all aspects of law enforcement in the Village remained with the County. That alone provides weighty support for a finding that no agency relationship existed between the officers and the Village.

Additionally, the other three factors also support such a finding. Wagner, along with the other assigned officers, remained a full-time employee of and was paid by the County. Further, the level of skill required to perform law enforcement work was specialized and significant. Finally, while the Village paid for some of the vehicles and provided office space, the bulk of the equipment was provided by the County. Therefore, based on this undisputed evidence, Wagner was not an agent of the Village.

This conclusion is further bolstered by the testimony of Wagner and Strickland. Both men testified that the County retained complete control over all law enforcement actions related to the Village. Further, Strickland stated that he left all law enforcement decisions to the County deputies and supervisors such as Wagner. There is no evidence to dispute this testimony.[6]

Based on all of the undisputed evidence, neither Wagner, nor any other officer, was an agent of the Village for purposes of vicarious liability under Illinois law. Accordingly, the Village is entitled to summary judgment as to all of plaintiff's state-law claims.

For the foregoing reasons, the court grants summary judgment to the Village as to all of plaintiff's federal and state-law claims and dismisses Hunter with prejudice.

---

1. Hunter has been voluntarily dismissed by plaintiff. See docket entry # 42. The court, therefore, enters an order dismissing Hunter with prejudice.

2. According to the Village wesbsite, Strickland is the village president as well as mayor. See www.machesney-park.il.us. The parties refer to him as mayor, and the court will do so as well.

3. While all three entities are parties to the agreement, the court will refer to the Village and the County for simplicity's sake.

4. It is questionable whether simply designating someone as an agent would alone trigger Monell liability, but that is an issue the court need not answer here.

5. The court notes that plaintiff has not shown in any other respect that the intergovernmental agreement, or the decision to enter into it, in any way resulted in the alleged harm caused by Wagner.

6. To the extent Strickland testified that he communicated regularly with Wagner regarding policing issues within the Village, such testimony does not show that Strickland either had a right to, or in fact did, control any aspect of law enforcement in the Village. Rather, it merely demonstrates that both individuals were working together to insure the delivery of effective law enforcement services to the citizens of the Village.